IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ALMA PARSONS,

          Plaintiff,

v.                                   CIVIL ACTION NO.   2:20-cv-00132

BOARD OF TRUSTEES OF THE
BOILERMAKER-BLACKSMITH
NATIONAL PENSION TRUST,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion to Dismiss Plaintiff's Complaint* (Document 11), the *Defendant's Suggestions in Support of Its Motion to Dismiss Plaintiff's Complaint* (Document 12), the Plaintiff's *Memorandum in Opposition to Defendant's Motion to Dismiss* (Document 18), and the *Defendant's Reply in Support of Its Motion to Dismiss Plaintiff's Complaint* (Document 20).  For the reasons stated herein, the Court finds that the motion to dismiss should be denied.

**FACTUAL ALLEGATIONS**

The Plaintiff, Alma Parsons, brings this action pursuant to the Employee Retirement Security Act (ERISA), 29 U.S.C. § 1001, *et. seq.*, alleging that the Defendant, acting as a sponsor, violated her interest in her former husband's pension plan.  The Plaintiff's ex-husband, Rodger Parsons, was a participant of the Boilermaker-Blacksmith National Pension Trust (Plan).

Mr. Parsons became a participant in the Plan in 1966. Under Article VI of the Plan, the automatic form of payment for married participants is the "50% Husband and Wife Pension," which provides a pension in the form of a qualified joint and survivor annuity (QJSA) for the lifetime of the participant and the participant's surviving legal spouse. The Plaintiff alleges that, as a married participant at that time, Mr. Parsons was automatically enrolled in the 50% Husband and Wife Pension.

On November 20, 1985, the Plaintiff and Mr. Parsons divorced. The divorce decree granted Mr. Parsons "[a]ll retirement benefits to which he is presently entitled . . . as a result of past or present employment, with [Alma Parsons] to be named as the sole beneficiary and entitled to receive the aforesaid benefits in the event of the death of [Mr. Parsons]." (Compl. ¶ 8.) The divorce decree further stated, "a Certified copy of this Judgment Entry shall be sent to the Boilermaker-Blacksmith National Pension Trust and shall allow the representatives of said Trust to make the appropriate changes therein so as to indicate [Alma Parsons] as the beneficiary of any interest of [Rodger Parsons] in said Trust." (Compl. ¶ 10.) The November 20, 1985 decree constitutes a Qualified Domestic Relations Order (QDRO) as to Mr. Parsons' retirement benefits.

In 1995, ten years after the divorce decree was entered, Mr. Parsons applied for an Early Retirement Pension under the Plan in the form of a single life annuity with sixty guaranteed payments, which the Defendant granted. The Defendant did not obtain the Plaintiff's consent to waiver before allowing Mr. Parsons to alter his form of payments from a QJSA to a single life annuity.

In 2018, Mr. Parsons passed away. The Plaintiff alerted the Defendant of his death and asserted that the Pension Trust was obligated to pay survivor pension benefits to her in accordance

with the QDRO. In December 2018, the Defendants denied the Plaintiff's claim for benefits, simply stating that "the document fails to meet the Plan's requirements for qualification as a QDRO, therefore nothing is payable from the Plan to you on behalf of deceased pensioner Rodger E. Parsons."

The Plaintiff timely appealed under the Plan's terms, arguing that she was entitled to all retirement benefits to which Rodger Parsons was entitled on November 20, 1985, upon his death. On March 5, 2019, Plaintiff's appeal was administratively granted, in part. The Defendant acknowledged that the November 20, 1985 divorce decree constituted a QDRO. The Defendant further acknowledged that the Plaintiff was entitled to certain benefits and paid the Plaintiff the Plan's $6,000 post-retirement death benefit. The Plaintiff appealed a second time, asserting her right to survivorship benefits allegedly granted in the QDRO.

On April 15, 2018, the Defendant denied the Plaintiff's claim to survivorship benefits, stating that "[t]he divorce decree, which has been accepted by our legal counsel as a QDRO states that the Alternate Payee shall be named as the Participant's sole beneficiary. The Order does not state that the Alternate Payee is to be treated as the surviving spouse of the Participant. Accordingly, pursuant to IRC § 414(p)(5) . . . the Alternate Payee is not entitled to surviving spouse benefits, and the Participant was not required to obtain spousal consent from the Alternate Payee as his former spouse prior to commencing benefits in the elected form of payment." (Compl. ¶ 24.)

On November 29, 2019, the Plaintiff filed the complaint in this action, bringing a claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which authorizes a plan participant to bring an action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her]
3

rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

When reviewing a motion to dismiss, the Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.

4

*Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

## DISCUSSION

ERISA was enacted to protect employees and their beneficiaries by ensuring the proper administration of employee benefit plans. *Boggs v. Boggs*, 520 U.S. 833, 839 (1997). The Retirement Equity Act of 1984 (REA) amended ERISA with respect to surviving spouses in two important ways. REA requires pension plans to provide automatic benefits to surviving spouses. *Id.* at 843; 29 U.S.C. § 1055(a). Additionally, while ERISA generally prohibits assignment or alienation of benefits under a pension plan, REA provides for a Qualified Domestic Relation Order (QDRO) exception wherein a former spouse or children of a previous marriage may be designated as an alternate payee and thereby "receive all or a portion of the benefits payable with respect to a participant under the plan." 29 U.S.C. § 1056(d)(3)(B)(i)(l).

A domestic relations order is any judgment, decree, or property settlement that "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant" and "is made pursuant to a State domestic relations law." *Id.* at § 1056(d)(3)(B)(ii). However, in order for a domestic relations order to qualify as a QDRO, it must meet the following requirements: (1) the order must specify the name and mailing address of the alternate payee and the affected plan participant, (2) the amount or

percentage of the participant's benefits to be paid or the means by which that amount will be determined, (3) the number of payments or time period to which the order applies, and (4) each plan to which the order applies. *Id.* at § 1056(d)(3)(C). Moreover, a QDRO cannot (1) require the plan to provide any type of benefit not otherwise provided, (2) require the plan to provide increased benefits, or (3) require benefits to be paid to an alternate payee which must be paid to another alternate payee under the QDRO. *Id.* at § 1056(d)(3)(D).

A plan administrator generally has discretion to determine whether a domestic relations order constitutes a QDRO, but such determinations are reviewable by courts. *Dorn v. Int'l Bhd. of Elec. Workers*, 211 F.3d 938, 946 (5th Cir. 2000). In determining whether a domestic relations order is a QDRO, courts have required substantial compliance with the drafting requirements. *Hamilton v. Washington State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091, 1097 (9th Cir. 2006). The "pivotal question is whether the dissolution order 'clearly contains the information specified in the statute that a plan administrator would need to make an informed decision.'" *Id.* (quoting *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1154 (9th Cir. 2000)).

If a domestic relations order qualifies as a QDRO, then "any spouse, former spouse, child, or other dependent of a participant" that is designated as an alternate payee shall be considered a "beneficiary under the plan." *Id.* at §§ 1056(d)(3)(J)-(K). Thereby, a former spouse can obtain a secured interest in benefits merely by obtaining a QDRO. *Id.* at 1056(d)(3)(A); *Metro. Life Ins. Co. v. Pettit*, 164 F.3d 857, 864 (4th Cir. 1998); *Hopkins v. AT&T Global Info. Solutions Co.*, 105 F.3d 153, 157 (4th Cir. 1997).

As noted above, ERISA requires pension plans to provide automatic survivor benefits to retiring participants. *Dorn*, 211 F.3d at 943. A Qualified Joint and Survivor Annuity (QJ&SA) is the principal mechanism for providing such survivor benefits. *Id.* "[A] QJ&SA comprises two separate and distinct benefits: (1) An annuity for the life of the participant, and (2) a succeeding annuity for the life of the surviving spouse (if there is one) of not less than 50% of the participant annuity." *Id.* Generally, in order for one to qualify as a surviving spouse in the context of a QJ&SA they must be married to the participant "(1) during the applicable election period, (2) on the annuity starting date, or (3) at [the participant's] death." *Id.* at 947 (internal quotation marks omitted).

Former spouses, however, can also receive surviving spouse benefits under certain circumstances. "*To the extent provided* in any qualified domestic relations order . . . the former spouse of a participant shall be treated as a surviving spouse of such participant." 29 U.S.C. § 1056(d)(3)(F)(i) (emphasis added). Federal courts have held that, in order for a former spouse to be entitled to surviving spouse rights, "any assignment of surviving spouse rights in a QDRO must be explicit, rather than implicit." *Hamilton*, 433 F.3d at 1099; *Hopkins*, 105 F.3d at 155; *Dorn*, 211 F.3d at 947. Moreover, where a QDRO is silent as to surviving spouse rights, a designation of alternate payee or beneficiary does not elevate one to the status of a surviving spouse entitled to a survivor annuity under a QJ&SA. *Dorn*, 211 F.3d at 947.

The detailed requirements for drafting a QDRO have been characterized as a "drafting morass for the lawyer." *Hamilton*, 433 F.3d at 1096. The Court recognizes "the concern expressed by courts and commentators that the failure of domestic relations lawyers to 'navigate the treacherous shoals' of ERISA may harm potential beneficiaries." *Id.* (quoting *Metro. Life Ins.*

*Co. v. Wheaton*, 42 F.3d 1080 (7th Cir. 1994)). Nevertheless, "Congress required that QDROs be specific and clear because it was concerned with reducing the expense to plan providers and protecting them from suits for making improper payments." *Id.* at 1096-97 (quoting *In re Gendreau*, 122 F.3d 815, 817-18 (9th Cir. 1997)) (internal quotation marks omitted).

As an initial matter, the Plaintiff argues that the Court should not consider the QDRO or the Plan Document, because review of such documents is premature at the motion to dismiss stage and would instead convert this motion into one for summary judgment. This argument is without merit. For purposes of a motion to dismiss, "a court may consider official public records, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396 (4th Cir. 2006). A court may also consider pension plan documents for a motion to dismiss when a plaintiff relies on such documents in the complaint. *Stewart v. Pension Trust of Bethlehem Steel Corp.*, 12 Fed. Appx. 174, 176 (4th Cir. 2001). Both the QDRO and the Plan Document fall under this umbrella and may be considered in light of the motion to dismiss.

In the motion to dismiss, the Defendant argues that the Plaintiff has failed to state a claim, because the Plaintiff was not designated as a surviving spouse under the QDRO, and therefore, she is not entitled to a surviving spouse annuity. The Plaintiff argues that the plain language of the QDRO called for Mr. Parsons to receive lifetime benefits until his death and for the Plaintiff to receive a lifetime pension thereafter. The Plaintiff also argues that the QDRO details a "clearly specified" right to post-participant-death survivor benefits, entitling her to a surviving spouse annuity as a surviving spouse.

The QDRO states that Mr. Parsons shall own as his own property "all retirement benefits to which he is presently entitled to as a result of past or present employment, with [Ms. Parsons] to be named as sole beneficiary and entitled to receive the aforesaid benefits in the event of the death of [Mr. Parsons]." (Document 11, Ex. A.) As such, the QDRO indicates that the Plaintiff may be entitled to some form of survivor's benefits. In terms of bestowing survivor's benefits, the QDRO language in this case is stronger than comparable QDRO language in other cases. See *Dorn*, 211 F.3d at 947 (noting that the QDRO was completely silent as to survivor's benefits); *Samaroo v. Samaroo*, 193 F.3d 185, 186-87 (3d Cir. 1999) (finding that a QDRO which explicitly granted an ex-spouse half of a participant's monthly pension did not grant surviving spouse benefits). In this case, however, the QDRO language provides for a broad grant of "all retirement benefits" to commence at the death of the participant.

Further, the Defendant argues that Mr. Parsons was not enrolled in the 50% Husband and Wife Pension Plan, because the Plan itself prohibits that result. The Plaintiff argues that Mr. Parsons was enrolled in the 50% Husband and Wife Pension at the time of the divorce decree because married participants are automatically enrolled in this plan. Thereby, the Plaintiff argues that the QDRO was clearly in reference to the 50% Husband and Wife Pension, which provides a lifetime pension starting after the participant's death for a participant's surviving legal spouse.

Accepting all factual allegations in the complaint as true at this stage in the proceeding, the Court accepts the allegation that Mr. Parsons was enrolled in the 50% Husband and Wife Pension at the time of the divorce decree. Thus, the QDRO was drafted in reference to the benefits to which Mr. Parsons was "presently entitled" at the time the divorce decree was entered, which, given the allegations, could entitle her to receipt of "all benefits" available from that 50% Husband

9

and Wife Pension upon Mr. Parsons' death.  Therefore, the Court finds that the Plaintiff has set forth a legally sufficient claim and the motion to dismiss should be denied.

## CONCLUSION

WHEREFORE, after careful consideration, the Court **ORDERS** that the *Defendant's Motion to Dismiss Plaintiff's Complaint* (Document 11) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: April 20, 2020

*/s/ Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA