**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ALMA PARSONS,

Plaintiff,

v. CIVIL ACTION NO. 2:20-cv-00132

BOARD OF TRUSTEES OF THE
BOILERMAKER-BLACKSMITH
NATIONAL PENSION TRUST,

Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Defendant's Motion for Summary Judgment* (Document 27) and *Memorandum in Support of Its Motion for Summary Judgment* (Document 29), *Plaintiff's Motion for Judgment on the Administrative Record* (Document 31) and *Memorandum in Support of Motion for Judgment on the Administrative Record* (Document 32), *Plaintiff's Opposition to Defendant's Motion for Summary Judgment* (Document 36), *Defendant's Opposition to Plaintiff's Motion for Judgment on the Administrative Record* (Document 37), *Defendant's Reply in Support of Its Motion for Summary Judgment* (Document 38), *Plaintiff's Reply to Defendant's Opposition to Motion for Judgment on the Administrative Record* (Document 39), and all attendant documentation. For the reasons stated herein, the Court finds that the Defendant's motion should be denied, and that the Plaintiff's motion should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, Alma Parsons, brought this action pursuant to the Employee Retirement Security Act (ERISA), 29 U.S.C. § 1001, *et. seq.*, alleging that the Defendant, acting as a sponsor,

violated her interest in her former husband's pension plan. The Plaintiff's ex-husband, Rodger Parsons, was a participant of the Boilermaker-Blacksmith National Pension Trust (Plan).

Mr. Parsons became a vested participant in the Plan in 1976. Under Article VI of the Plan, the form of payment for married participants is the "50% Husband and Wife Pension," which provides a pension in the form of a qualified joint and survivor annuity (QJSA) for the lifetime of the participant and the participant's surviving legal spouse.

On November 20, 1985, the Plaintiff and Mr. Parsons divorced. The divorce decree granted Mr. Parsons "[a]ll retirement benefits to which he is presently entitled . . . as a result of past or present employment, with [Alma Parsons] to be named as the sole beneficiary and entitled to receive the aforesaid benefits in the event of the death of [Mr. Parsons]." (Document 29-3 at BNF 000541.) The divorce decree further stated, "a Certified copy of this Judgment Entry shall be sent to the Boilermaker-Blacksmith National Pension Trust and shall allow the representatives of said Trust to make the appropriate changes therein so as to indicate [Alma Parsons] as the beneficiary of any interest of [Rodger Parsons] in said Trust." (*Id.*) The parties agree that the November 20, 1985 decree constitutes a Qualified Domestic Relations Order (QDRO) as to Mr. Parsons' retirement benefits.

In 1995, ten years after the divorce decree was entered, Mr. Parsons applied for an Early Retirement Pension under the Plan in the form of a single life annuity with sixty guaranteed payments, which the Defendant granted. On September 19, 1995, the Defendant wrote to the Plaintiff, requesting her to clarify whether she should still be considered Mr. Parson's beneficiary.

On May 23, 2018, Mr. Parsons passed away. The Plaintiff alerted the Defendant of his death and asserted that the Pension Trust was obligated to pay survivor pension benefits to her in

accordance with the QDRO. In December 2018, the Defendants denied the Plaintiff's claim for benefits, stating that "the document fails to meet the Plan's requirements for qualification as a QDRO, therefore nothing is payable from the Plan to you on behalf of deceased pensioner Rodger E. Parsons." (Document 29-14.)

The Plaintiff timely appealed under the Plan's terms, arguing that she was entitled to all retirement benefits to which Rodger Parsons was entitled on November 20, 1985, upon his death. On March 5, 2019, Plaintiff's appeal was administratively granted, in part. The Defendant acknowledged that the November 20, 1985 divorce decree constituted a QDRO. The Defendant further acknowledged that the Plaintiff was entitled to certain benefits and paid the Plaintiff the Plan's $6,000 post-retirement death benefit. The Plaintiff appealed a second time, asserting her right to survivorship benefits allegedly granted in the QDRO.

On June 14, 2019, the Defendant denied the Plaintiff's claim to survivorship benefits, stating that "IRC 414(p)(5) provides that a former spouse of a participant shall be treated as such participant's surviving spouse for purposes of receiving a survivor annuity '*to the extent provided in any qualified domestic relations order*.' The QDRO on file states that Ms. Parsons shall be named as the Participant's sole beneficiary. It does not state that she is to be treated as the surviving spouse of the Participant. Furthermore, Ms. Parsons' knowingly waived her right to claim a share of the Participant's retirement benefits per Paragraph P of the QDRO." (Document 29-19 at BNF 000631.)

On November 29, 2019, the Plaintiff filed the complaint in this action, bringing a claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which authorizes a plan participant to bring an action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her]

rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." On February 28, 2020, the Defendant filed a motion to dismiss the complaint. By memorandum opinion and order entered on April 20, 2020, this Court denied the Defendant's motion to dismiss.

On July 31, 2020, the Defendant filed a motion for summary judgment. On August 2, 2020, pursuant to an order granting an extension of time to file, the Plaintiff filed a motion for judgment on the administrative record. The Plaintiff filed a response on August 14, 2020, and the Defendant filed a response on August 17, 2020. The Defendant and the Plaintiff filed their respective replies on August 21 and August 24, 2020. The pending motions are now ripe for consideration.

**STANDARD OF REVIEW**

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir.1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review. *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) aff'd, 474 F. App'x 101 (4th Cir. 2012). Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the non-moving party as to each motion. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

**ARGUMENT**

The Defendant argues that the QDRO clearly indicates that the Plaintiff is to be treated as a beneficiary, not a surviving spouse. This is evidenced, the Defendant argues, by the use of the term "beneficiary" in the QDRO, the full language of the QDRO, and the surrounding circumstances when the parties agreed to the QDRO. The Defendant also argues that Mr. Parsons was not enrolled in the 50% Husband and Wife Pension, because he was not, at that time, eligible to enroll in any pension since he was not disabled, he had not reached age fifty-five, and he had not reached Normal Retirement Age. Contrary to the Plaintiff's arguments, the Defendant contends that Mr. Parsons was not automatically eligible to receive the 50% Husband and Wife Pension since he was not enrolled in any pension plan at that time. Thus, the Defendant argues the Plaintiff is not entitled to any surviving spouse benefits, and the Court should grant summary judgment against her claim.

The Plaintiff argues that the QDRO effectively protected her right to a survivorship annuity. In particular, the Plaintiff highlights the language in the QDRO that granted Mr. Parsons

"all retirement benefits to which he is presently entitled," with the Plaintiff to be "entitled to receive the aforementioned benefits in the event of the death of [Mr. Parsons.]" (Document 32 at 13.) The Plaintiff argues that the plain meaning of "all retirement benefits" includes both pension benefits and death benefits. The Plaintiff also argues that QDRO at issue in this case is a "separate interest" QDRO, which divides the pension in to two different pensions—one for the plan participant and one for the alternate payee. As such, the Plaintiff argues that what she waived in paragraph (P) of the QDRO was the right to share in Mr. Parsons' pension during his lifetime, not the right to receive pension benefits after his death.

**DISCUSSION**

ERISA was enacted to protect employees and their beneficiaries by ensuring the proper administration of employee benefit plans. *Boggs v. Boggs*, 520 U.S. 833, 839 (1997). The Retirement Equity Act of 1984 (REA) amended ERISA with respect to surviving spouses in two important ways. REA requires pension plans to provide automatic benefits to surviving spouses. *Id.* at 843; 29 U.S.C. § 1055(a). Additionally, while ERISA generally prohibits assignment or alienation of benefits under a pension plan, REA provides for a Qualified Domestic Relation Order (QDRO) exception wherein a former spouse or children of a previous marriage may be designated as an alternate payee and thereby "receive all or a portion of the benefits payable with respect to a participant under the plan." 29 U.S.C. § 1056(d)(3)(B)(i)(l).

A domestic relations order is any judgment, decree, or property settlement that "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant" and "is made pursuant to a State domestic relations law." *Id.* at § 1056(d)(3)(B)(ii). However, in order for a domestic relations order to

qualify as a QDRO, it must meet the following requirements: (1) the order must specify the name and mailing address of the alternate payee and the affected plan participant, (2) the amount or percentage of the participant's benefits to be paid or the means by which that amount will be determined, (3) the number of payments or time period to which the order applies, and (4) each plan to which the order applies. *Id.* at § 1056(d)(3)(C). Moreover, a QDRO cannot (1) require the plan to provide any type of benefit not otherwise provided, (2) require the plan to provide increased benefits, or (3) require benefits to be paid to an alternate payee which must be paid to another alternate payee under the QDRO. *Id.* at § 1056(d)(3)(D).

A plan administrator generally has discretion to determine whether a domestic relations order constitutes a QDRO, but such determinations are reviewable by courts. *Dorn v. Int'l Bhd. of Elec. Workers*, 211 F.3d 938, 946 (5th Cir. 2000). In determining whether a domestic relations order is a QDRO, courts have required substantial compliance with the drafting requirements. *Hamilton v. Washington State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091, 1097 (9th Cir. 2006). The "pivotal question is whether the dissolution order 'clearly contains the information specified in the statute that a plan administrator would need to make an informed decision.'" *Id.* (quoting *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1154 (9th Cir. 2000)).

If a domestic relations order qualifies as a QDRO, then "any spouse, former spouse, child, or other dependent of a participant" that is designated as an alternate payee shall be considered a "beneficiary under the plan." *Id.* at §§ 1056(d)(3)(J)-(K). Thereby, a former spouse can obtain a secured interest in benefits merely by obtaining a QDRO. *Id.* at 1056(d)(3)(A); *Metro. Life Ins.*

*Co. v. Pettit*, 164 F.3d 857, 864 (4th Cir. 1998); *Hopkins v. AT&T Global Info. Solutions Co.*, 105 F.3d 153, 157 (4th Cir. 1997).

As noted above, ERISA requires pension plans to provide automatic survivor benefits to retiring participants. *Dorn*, 211 F.3d at 943. A Qualified Joint and Survivor Annuity (QJ&SA) is the principal mechanism for providing such survivor benefits. *Id.* "[A] QJ&SA comprises two separate and distinct benefits: (1) An annuity for the life of the participant, and (2) a succeeding annuity for the life of the surviving spouse (if there is one) of not less than 50% of the participant annuity." *Id.* Generally, in order for one to qualify as a surviving spouse in the context of a QJ&SA they must be married to the participant "(1) during the applicable election period, (2) on the annuity starting date, or (3) at [the participant's] death." *Id.* at 947 (internal quotation marks omitted).

Former spouses, however, can also receive surviving spouse benefits under certain circumstances. "*To the extent provided* in any qualified domestic relations order . . . the former spouse of a participant shall be treated as a surviving spouse of such participant." 29 U.S.C. § 1056(d)(3)(F)(i) (emphasis added). Federal courts have held that, in order for a former spouse to be entitled to surviving spouse rights, "any assignment of surviving spouse rights in a QDRO must be explicit, rather than implicit." *Hamilton*, 433 F.3d at 1099; *Hopkins*, 105 F.3d at 155; *Dorn*, 211 F.3d at 947. Moreover, where a QDRO is silent as to surviving spouse rights, a designation of alternate payee or beneficiary does not elevate one to the status of a surviving spouse entitled to a survivor annuity under a QJ&SA. *Dorn*, 211 F.3d at 947.

The detailed requirements for drafting a QDRO have been characterized as a "drafting morass for the lawyer." *Hamilton*, 433 F.3d at 1096. The Court recognizes "the concern

expressed by courts and commentators that the failure of domestic relations lawyers to 'navigate the treacherous shoals' of ERISA may harm potential beneficiaries." *Id.* (quoting *Metro. Life Ins. Co. v. Wheaton*, 42 F.3d 1080 (7th Cir. 1994)). Nevertheless, "Congress required that QDROs be specific and clear because it was concerned with reducing the expense to plan providers and protecting them from suits for making improper payments." *Id.* at 1096-97 (quoting *In re Gendreau*, 122 F.3d 815, 817-18 (9th Cir. 1997)) (internal quotation marks omitted).

Courts treat QDROs as binding contracts, to be interpreted in accordance with the law of the state where the QDRO was entered. *See Matthews v. E.I. DuPont DeNemours & Co.*, 682 F. App'x 148, 151 (3d Cir. 2017). The divorce in this case was entered by the Ohio Common Pleas Court in Erie County, Ohio. Therefore, this Court looks to Ohio law in interpreting terms of the QDRO.

Ohio courts interpret contracts according to parties' intent, which can be discerned from the language of the contract. *Forest Wheeler Enter., Inc. v. Franklin Cnty. Conventional Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997). "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271, 272 (Ohio 1984) (per curiam). Common words are to be given "their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument." *Wiseman v. Wiseman*, No. 13CA0009-M, 2014 WL 1896482, at *3 (Ct. App. Ohio, May 12, 2014). Only if a contract is ambiguous may courts look to extrinsic evidence outside the four corners of the document. *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 150 N.E.3d 28, 31 (Ohio 2019).

The QDRO states that Mr. Parsons shall own as his own property "all retirement benefits to which he is presently entitled to as a result of past or present employment, with [Ms. Parsons] to be named as sole beneficiary and entitled to receive the aforesaid benefits in the event of the death of [Mr. Parsons]." (Document 29-3 at BNF 000541.) Ultimately, this case turns on whether the term "beneficiary" or the phrase "all retirement benefits" delineates the type of benefits to which the Plaintiff is entitled.

As noted above, a QDRO provides a mechanism through which a former spouse may be designated as an alternate payee and thereby "receive all or a portion of the benefits payable with respect to a participant under the plan." 29 U.S.C. § 1056(d)(3)(B)(i)(l). ERISA requires that a QDRO must meet the following requirements: (1) the order must specify the name and mailing address of the alternate payee and the affected plan participant, (2) the amount or percentage of the participant's benefits to be paid or the means by which that amount will be determined, (3) the number of payments or time period to which the order applies, and (4) each plan to which the order applies. *Id.* at § 1056(d)(3)(C). ERISA, however, holds no requirement that the alternate payee be referred to specifically as a "surviving spouse." Thus, the Court finds that reference to the Plaintiff as the "beneficiary" in the QDRO is not dispositive of the Plaintiff's claim. *See Dorn*, 211 F.3d at 947 (concluding that use of the terms beneficiary or payee do not automatically elevate one to the status of a surviving spouse, but that the use of such terms is not necessarily a bar to surviving spouse benefits).

The QDRO does, however, clearly specify the percentage of the participant's benefits which are to be paid to the Plaintiff. The QDRO states that the Plaintiff is entitled to *all*, or one hundred percent, of the retirement benefits, to commence at the death of the participant. As an

initial matter, it strains a reasonable reading of the QDRO to conclude that such a broad grant of benefits equates to a mere $6,000 lump sum payment at the time of Mr. Parsons' death, as the Defendant argues. Additionally, as noted in this Court's previous opinion, in terms of bestowing survivor's benefits, the QDRO language in this case is stronger than comparable QDRO language in other cases. See *Dorn*, 211 F.3d at 947 (noting that the QDRO was completely silent as to survivor's benefits); *Samaroo v. Samaroo*, 193 F.3d 185, 186-87 (3d Cir. 1999) (finding that a QDRO which explicitly granted an ex-spouse half of a participant's monthly pension did not grant surviving spouse benefits). In contrast, the QDRO language in this case provides for a broad grant of "all retirement benefits" to commence at the death of the participant. Given that broad grant of all retirement benefits, this Court agrees with the Plaintiff that those benefits included both pension benefits and death benefits, since those constituted all benefits available under the plan.

The Defendant argues that "Section 6.08 explicitly provides that a Husband-and-Wife option is not available for a participant who is divorced before his or her Annuity Starting Date." (Document 29 at 10.) The Defendant further asserts that the Annuity Date would not commence until a participant is disabled, has reached age fifty-five, or has reached Normal Retirement Age. (*Id.* at 15.) Under the Defendant's reasoning, the former spouse of any participant who has not met one of those three criteria prior to the divorce is not entitled to any pension benefits. If this Court were to accept the Defendant's reasoning, it would render the QDRO exception which provides retirement benefits to former spouses, codified at 29 U.S.C. § 1056(d)(3)(B)(i)(l), void in many, if not most, instances. Clearly, interpreting plan benefits available under the QDRO in accordance with the Defendant's preferred reading would lead to invalidating a portion of the statute. *Forest Wheeler*, 678 N.E.2d at 526 (finding that contracts are to be interpreted in a

manner that avoids absurd results). The Court finds that the QDRO should, instead, be read to comport with the mandates of ERISA.

Given the clear language in the QDRO, coupled with the structure of the QDRO and the Plan, this Court finds the contract to be unambiguous. Therefore, interpretation of the contract is a matter of law, there are no further factual issues to be determined, and summary judgment is appropriate. Accordingly, the Court finds that summary judgment should be granted in the Plaintiff's favor, and that the Plaintiff is entitled to a joint and survivor annuity pursuant to her QDRO and the Plan.

**CONCLUSION**

WHEREFORE, after careful consideration and for the reasons stated herein, the Court **ORDERS** that the *Defendant's Motion for Summary Judgment* (Document 27) be **DENIED** and that the *Plaintiff's Motion for Judgment on the Administrative Record* (Document 31) be **GRANTED**. Specifically, the Court **ORDERS** that the Plaintiff is entitled to a joint and survivor annuity pursuant to the QDRO and the Plan.

Further, the Court **ORDERS** that the Plaintiff submit any documentation in support of her request for attorney's fees and costs pursuant to 29 U.S.C. § 1132(g) no later than **October 16, 2020,** and that the Defendant submit any response no later than **November 6, 2020**. The Court shall retain jurisdiction only for the purpose of determining whether to grant fees and costs and, if so, the amounts thereof.

Lastly, the Court **ORDERS** that this matter be **DISMISSED** and **STRICKEN** from the docket of this Court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: September 16, 2020

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA